The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good afternoon. The court is taking up the case number 4-240733, in Ray, the Commitment of James, people of the State of Illinois, versus James, James Jr. Counsel for the appellant, if you'll please state your name for the record. William Breedlove. And Counsel for the appellee, if you'll please state your name for the record. Jeremy Sawyer. Mr. Breedlove, you may proceed with your argument. Thank you, Your Honor. I'll go in reverse of the arguments that I have in the brief that is starting with why the statute is unconstitutional as applied to Mr. James. The state indicates that they believe that that issue is foreclosed by the precedent of in re-detention of Herbert Varner, the Illinois Supreme Court case. The difference here is in the Varner case that they cite, which is the 207 Illinois 2nd 425. That's not an as-applied, and in that case, there's no evidence that the respondent, Mr. Varner, was in the same mental condition as my client, Mr. James. And for those reasons, first of all, I don't believe that it is foreclosed by that precedent. Second, the United States Supreme Court is clear that the due process requirement of statutes like these is that it meets the purpose for why the individual is committed. And in Kansas v. Hendricks, a 1997 decision from the United States Supreme Court, they make it clear that the confinement has to be for rehabilitation. If it's confinement for any other purpose, it's a penal statute, and we are well aware that this is a civil statute. There are lots of cases, obviously, about that. This is a civil confinement based on something that the legislature has decided somebody needs to be civilly confined, and when they do that, it has to be only for the purposes of rehabilitation. And for somebody to be rehabilitated, they have to have the ability to be rehabilitated. And here, the evidence is clear, through no fault of Mr. James, but simply by the nature of who he is and the nature of his cognitive problems, he has an IQ of 65, diagnosis of mental retardation and mild intellectual disability, he's on the autism spectrum, and he has intellectual and language deficits. That's all in the record at 77, 164, 165, 159. It becomes impossible for him to be rehabilitated. We understand the state's contention and perhaps what the concern is, that Mr. James shouldn't be in public, given the way these mental problems express themselves when he's in public. And that may very well be the case, but that's not the argument that we have. The argument is whether or not confining him based on the statute under which he is confined is constitutional as applied to him. And because the goal itself is impossible, you can't confine somebody. It's like contempt. When you have to give somebody the keys to let themselves out for contempt, it has to be a goal they can actually achieve. The same analysis applies here. If we're going to confine people until they can reach a certain goal, if we set the goal to be something that they cannot, through no fault of their own, ever achieve, then we're not confining them for the purpose of achieving a goal. We're confining them for penal reasons and essentially sentencing Mr. James to life. Because that's what this is. Counsel, if I may? Yes, ma'am. You're on air. Wasn't there testimony, Dr. Brucker's testimony, that Respondent was making progress towards his rehabilitation at the TDF? And that he was attending a five-stage treatment program and had completed the first stage? That is correct. And that he was learning to accept responsibility for his conduct? Yes. So, doesn't that suggest... All of that is... I apologize, Your Honor. No. So, explain to me why that doesn't suggest that there is the progress that he is making and how you suggest that he cannot be treated, if you will. So, there is... Just because somebody's making progress, I can make progress to a goal that I may never be able to achieve. So, progress doesn't mean something is achievable. And so, these goals are not achievable for Mr. James, despite the fact that he's making progress, right? I could make progress towards becoming an Olympic swimmer, right? The first step for me would be to learn how to do all the strokes or maybe even learn what they're all called, learn the mechanics of it. That doesn't mean that I'm ever going to be able to become an Olympic swimmer. So, the goal here for Mr. James, even though Dr. Brucker has suggested he's making progress towards it, that doesn't stand for the proposition that it can ultimately be achieved. And again, the unimpeached testimony from our expert was that there's no treatment in the facility for the conditions that Mr. James has. And so, they're unable to get him fully resolved on these issues. And they're unable to help him overcome these issues in a way that meets constitutional muster. Well, counsel, that's the exact opposite of what Dr. Brucker said. He said respondent was in a specialized sex offense specific group for individuals that had intellectual disabilities and learning problems. I mean, he's being offered specialized treatment because they recognize his cognitive issues. I understand that, Your Honor. That doesn't, again, that doesn't stand for the proposition that it's sufficient. It's not going to be sufficient for somebody with an IQ of 65 and all the other issues that he has to be able to overcome those issues. Our expert testified as soon as he's not going to be able to overcome those issues, regardless of the amount of treatment that he receives. And so, for those reasons, I don't believe Dr. Brucker's limited testimony and little limited experience with Mr. James overcomes that argument, Your Honor. Well, did that require the trial court to assess the difference between whatever Dr. Brucker was saying and your expert was saying? I don't believe so. I think it's something that this court can review de novo because that portion of it is a question of law, whether or not he can achieve this end, whether or not, as applied, it's constitutional. I don't believe the trial court made any facts, findings of fact in relation to that. So to the extent that the court, this court believes that those findings of fact should have been made, then I believe that if this court can't make them, it would need to be been denied by this court outright. Are you assuming that someone with the IQ of 65, that people with IQs of 65 are all the same? No, quite to the contrary. Everybody has a different experience. He has an IQ of 65 and other issues. That's why it's important to have somebody who has known him as long as our expert has and why I believe she's more credible because she didn't treat him as an individual. She's known him, or excuse me, she did treat him as an individual because she's known him for so much longer than the state's expert had so much more experience with him, your honor. So no, not all people with an IQ of 65 are the same. I have clients with that IQ in other contexts, obviously, that aren't in SVP, SDP settings. So they don't all develop and have the same response to having those mental issues, your  If there aren't further questions related to the constitutional analysis, I'd move again, moving backwards to subsection B of my brief, which is on the whether or not the state met their burden. As I just responded to your honor's questions, the reason that I don't believe the state met their burden is they relied the government or excuse me, the court ended up relying on somebody whose analysis was frankly inferior to the expert that we had. It was inferior in terms of the frequency with which it had been done. It was inferior to the frequency and quality of reporting that she had with Mr. James as an individual. There is simply no way to look at the two experts and decide that the one who has the better opinion of Mr. James's situation is the one who's met with them a mere fraction of the time as our expert who has known him, as the record indicates, for a significant period of time. Lastly, your honor, your honors, I want to move to the argument about the indefinite versus definite article in section 2075 at page 22 of the state's brief. They suggest that the use of a person in subsection F where it says a person who has been convicted of a sexually violent offense leads credence to their idea that looking at the definite versus indefinite article is form over substance and should essentially be ignored. I disagree. I think it stands, frankly, for the exact opposite. In subsection F, the definition of sexually violent person, they talk about a person who has been convicted of a sexually violent offense. That's the first clause. That is a clause that tries to capture a broad category of people. And so the legislature appropriately uses the article A because they're talking about a broad category of people, people who have been convicted of sexually violent offenses. And again, that is the exact same way that it is used in subsection B, where they say predisposes a person to engage in acts of sexual violence. And what that means is the legislature was aware of the difference between A and the, as they were doing this and the cases I cite stand for the proposition that articles count. That was an opinion from this court in 2018, People v. Hayden, that said, like all other words in a statute, the articles count. If possible, the court must give effect to every word, clause, and sentence, must not read a statute so as to render any part inoperative, superfluous, or insignificant. The articles matter. Counsel, if I may, though, aren't you really asking this court to change the act's definition of mental disorder such that it, instead of a person, it would really have to read every person with that condition would be predisposed to engage in acts of sexual violence? Isn't that really what you're asking us to suggest is by taking this definition, it would be interpreting a person to mean every person? No, Your Honor, I don't believe it extends that far. The way the statute reads is to create two categories that a person must meet, the mental disorder and the convictions. And when we look at those categories, they have to meet certain conditions. You have to, in order to be in the larger category of mental disorder, it has to be something that applies to people who have that mental disorder generally. It may not be every person because it's not going to be every person that has that mental disorder ends up being in the situation where they change to the definite article, the. So you may be a person with a mental disorder such as pedophilia who has also been convicted of a sexually violent offense. So you meet the two broad categories of the indefinite article A and subsection B and subsection F. But then when it gets to the next section, when it's the last clause of subsection F that makes it substantially probable that the person that's when we're finally talking about the individual in question, the individual whose rights are being curtailed by being placed in one of these facilities. We have to show that these two conditions have the effect on that person that they will engage in acts of sexual violence because not everybody that has pedophilia is going to engage in acts of sexual violence. So the scheme that the legislature sets up is it says if somebody has one of these mental disorders that we know is likely to cause certain problems and they have been convicted of an offense that is in the same category of certain problems, then and only then does the statute apply and we look, are they a person that is able to overcome that mental disorder and not be a person that will engage in acts of sexual violence? If they are, then the statute doesn't apply to them because they don't meet the final problem. If they are a person who's substantially likely to engage in sexual violence, then the act does apply to them and they can be committed. But again, as I argued earlier, they can only be committed if they can be cured, if these problems can be resolved. And so when you read the statute as a whole, as the state suggests, and as the law requires, that is the scheme that the state has set up via the legislature. We have to look, do they fall into these two categories of people? And if so, are they a person that will engage in acts of sexual violence? Because otherwise, you can take any disorder whatsoever and say, well, this is a person who's engaged in sexually violent behaviors. They fall under the broad category of the first clause of subsection F. And then we can say, well, we look at the static R, they're likely to do it again. If they have bad scores on the static 99R or any of the other analyses that they use. And then they can bootstrap and say, well, they also have a mental disorder. They have antisocial personality disorder. Sure, 99% of people that have antisocial personality or disorder don't act out and it doesn't affect them in a way that predisposes them to engage in acts of sexual violence. But this guy does act and engage in acts of sexual violence. He has something that we consider a mental disorder generally. So we're going to apply the legal definition from the statute. And then we can essentially inter them in this facility for life. And that is not at all what the statute is designed to do. It has to be a mental disorder that affects the emotional or volitional capacity and predisposes a person to engage in acts of sexual violence. And so it has to be something that predisposes anybody that has it to engage in acts of sexual violence. Again, meaning everyone that has that diagnosis. So everyone that has a specific diagnosis. Well, you're using the phrase anybody, but I guess my question is, based on your argument, aren't you stating that anybody means everyone? So in terms of whether they fall into the category of Section B, yes. Right. So it's a Venn diagram of three parts. You have to meet the mental disorder. You have to have the sexually violent offense. And you have to have the likelihood that you'll engage in acts of sexual violence. And the problem with the state's reading of the statute is that they go from three circles in the Venn diagram to two circles in the statute. They essentially ignore mental disorder because anything that makes it likely that somebody's going to engage in acts of sexual violence is by definition going to be a mental disorder. Because if a mental disorder can be antisocial personality disorder, well, violating the rights of others is a disorder. Constantly desiring to violate the rights of another person, that is a mental disorder in medical terms. Now, for the statute, it is not because that is not a mental disorder that would predispose the person to sexual violence. It may predispose the person to wanting to beat people up. It may predispose the person to wanting to light things on fire. It can predispose them to a lot of different things. And that is not the type of mental disorder that the legislature is concerned with. They are concerned with in this statute, the ones where we know there are going to be a likelihood of sexual violence problems. Again, things like pedophilia. And so when we expand it beyond that, we're subject not to the legislative restraint that meets with the due process of the respondents as described in the Supreme Court cases that allow these types of statutes to exist. Instead, we're governed only by the creativity of the prosecution and their expert to say, well, I understand this person has a disorder that doesn't cause anybody else to act out in a sexually violent way. But they have this disorder. They've acted out in a sexually violent way. It predisposes them to act out in a sexually violent way. If that was what the legislature intended, Section B would be entirely irrelevant. We wouldn't need it. Reading that section the way the state wants it to be read leads us to a conclusion that subsection F should simply read sexually violent person means a person who has been convicted of a sexually violent offense and is substantially probable that that person will engage in acts of sexual violence again. It eliminates wholly under the state's reading the reasoning that they must be have a mental disorder and that it is the mental disorder that is of a certain class that causes these concerns to arise. With that, Your Honors, I believe my time is concluded. So unless there are any other questions, I would rest other than rebuttal. Thank you. Mr. Sawyer, your argument, please. Good afternoon. May it please the court. Jeremy Sawyer on behalf of the people. This court should affirm the trial court's judgment adjudicating respondent a sexually violent person. The evidence that he suffers from a qualifying mental disorder under the act, which included his prior convictions as well as his actions while in custody, was sufficient to support the trial court's finding. And the act is not unconstitutional as applied to respondent, both under binding precedent and because the trial court reasonably found that he has a qualifying mental disorder. So I'll begin with the sufficiency of the evidence point. I'll first note that the only element that the respondent challenges here is whether he has a qualifying mental disorder under the act. And mental disorder is defined as a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence. And that's really a case-by-case evaluation. Whether a particular diagnosis qualifies as a mental disorder under that definition is a factual question that will vary in each particular case. And the finder of fact will hear testimony, as in this case, about whether that qualifies. So viewing the evidence in the light most favorable to the people here, there was ample evidence supporting the conclusion that respondent's personality disorder qualifies as a condition under the act. Dr. Brucker testified that respondent suffers from other specified personality disorder with antisocial traits. And Dr. Brucker explained how that disorder predisposes respondent to engage in acts of sexual violence. Dr. Brucker connected our respondent's criminal history, his history of criminal sexual acts to the diagnosis. In respondent's case, Brucker explained that he often lied or engaged in deceptive conduct, such as using aliases to facilitate his abusive behavior. Brucker also explained that respondent believed the law or any types of rules simply didn't apply to him. And that was evidenced in his criminal history, beginning with his 2009 convictions for aggravated criminal sexual abuse of two- and three-year-old children. And in speaking with Dr. Brucker for the clinical interview, our respondent admitted that he had sex with underage girls on multiple occasions. He was also convicted of violating his sex offender registration after being released from custody, and he admitted that he knew he could not be near a school because he was a convicted sex offender. And then most recently, he was convicted of indecent solicitation of a child. So Dr. Brucker explained how that criminal history was connected to the hallmarks of respondent's personality disorder and drove his sexual offending behavior. His behavioral history while in custody also supported Dr. Brucker's conclusion that his personality disorder drove his violence because on multiple occasions during his time in custody, respondent assaulted other inmates. So turning to respondent's statutory argument, the plain language of the SVP Act does not support his argument that a DSM-5 diagnosis can only support a finding of a mental disorder if that diagnosis predisposes every person who has it to commit acts of sexual violence. As your honors noted, the legislature could have used every person to make that clear, that was the intent of the legislature, but that is not the case. And the appellate courts have said that the SVP Act only requires one disorder, and it doesn't exclude any psychological condition. So really, it's a case-by-case evaluation for the fact finder in each particular case to determine whether there is a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence. However, reviewing for sufficiency of the evidence should not disturb the fact finder's assessment that in this case, respondent does have a qualifying mental disorder. Turning to the constitutionality argument, I disagree with opposing counsel. I believe that binding precedent does foreclose the constitutional challenge, both in terms of precedent from the U.S. Supreme Court, which has consistently upheld civil commitment statutes such as the SVP Act, and from Illinois courts. So opposing counsel cited Kansas v. Hendricks, that upheld civil commitment statutes in any case where proof of both future dangerousness and a mental illness is required, and the SVP Act here meets those qualifications. Similarly, the Illinois courts have upheld the SVP Act over due process challenges like this one. In Stanbridge, the court said, due process allows an individual to be held as long as he or she is both mentally ill and dangerous. And that's what the trial court as the finder of fact found here, that our respondent is both mentally ill, and as he concedes, he is substantially probable to engage in future acts of sexual violence. So having made those findings, the trial court complied with precedent, and respondent's constitutional challenge is foreclosed. Additionally, his constitutional challenge is based on the premise that he does not have a qualifying mental disorder, but that fails for the reasons discussed, because on sufficiency review, there was ample evidence to support the finding that he does have a qualifying mental disorder. So the constitutional challenge also fails on background. And finally, I note that the evidence did not support respondent's argument that the act cannot be constitutionally applied to him because he cannot be treated. As your honors noted, Brucker testified that respondent had made some progress in treatment. Dr. Brucker reviewed the treatment notes. He observed that respondent had made some progress, had taken responsibility, for instance, for attempting to meet up with a 15-year-old girl for sex. But the fact that he had not made further progress and had not progressed beyond the second stage does not mean it's inapplicable to him. So for all those reasons, the people asked that this court affirm the trial court's judgment adjudicating respondent, an SVP. Thank you, your honors. Thank you. Mr. Friedlotz, any rebuttal? Yeah, thank you, your honor. Two issues in rebuttal. The state's argument essentially is it should be a case-by-case situation for the judge to decide whether or not there's a mental disorder in each case. The problem is that would violate the plain language of the statute, because the plain language of the statute requires, under subsection B of section 5 of the definitions, it requires us to look to these categorical things. The legislature is being categorical twice and definitive once. The state's argument is that we should take their categorical approach and instead make it a case-by-case issue for the judge. And that is simply not what the legislature wrote. He indicates, well, if they wanted it to be every, they could have wrote every. But they also could have written it the way he describes, and they didn't. This court has previously held and reminded counsel that when we are looking at a statute, we must look at every word, every letter, and assume it serves a purpose. Here, they use a sometimes and the other times. The legislature must be assumed to be aware of the difference between definite and indefinite articles. Second, the state indicates that there's, again, that he's made progress and that that's sufficient. The problem is the unimpeached testimony at 205 of the record was that there is specialized programming that is designed for lower intellectual functioning, like Mr. James, but that that programming is specific to treating paraphilic urges. And both experts were clear that Mr. James does not have paraphilic urges. And so, regardless of whether or not he's made progress, he cannot make further progress because the testimony is that they do not have the treatment available for what ails Mr. James. And if they don't have the treatment available for what ails Mr. James, he cannot make further progress. He will eventually be stymied and reach a plateau that he cannot go beyond, and he will be being held for unconstitutional reasons as applied to him. For all those reasons, Your Honor, and the other reasons stated in the brief not mentioned in oral arguments today, we believe that the relief requested would be granted by this honorable court. Thank you. This court will take the matter under advisement, and this court stands in recess.